# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:19-CR-159-15 |
| | § | |
| ALEXANDRO JAVIER LARA | § | |

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

Before the Court is Defendant Alexandro Javier Lara's Motion to Review and Appeal Detention Order, requesting that the Court revoke the magistrate judge's order that he be detained pending trial. (Dkt. #292). The Court, having considered the motion, the record, and the applicable law, **DENIES** the motion.

## I. BACKGROUND

Lara was indicted by a grand jury on one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846.[1] The charge arises from the alleged coordinated actions of Lara and fourteen other codefendants to possess and distribute illegal drugs nationwide, as well as a related agreement among the codefendants to further an international drug conspiracy. Lara was arrested in Laredo, Texas, and pled not guilty. Lara was brought before Magistrate Judge Sam Sheldon who ordered Lara detained.[2] Lara appeals the detention order.

---

[1] Lara was originally charged with one count of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. (Dkt. #97). Lara's charge was subsequently changed to one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. (Dkt. #246).

[2] The magistrate judge's order of detainment found that Lara was subject to the rebuttable presumption that no condition or combination of conditions will reasonably assure

The Court held a hearing to consider the merits of Lara's appeal. Lara presented several witnesses, including his brother, mother, and four sisters. These witnesses discussed Lara's personal history and ties to his community and family. The Government presented the testimony of DEA Task Force Officer Prudencio Solis. Officer Solis testified concerning the events and circumstances resulting in Lara's indictment for conspiracy to possess with intent to distribute cocaine, as well as Lara's role in the drug trafficking organization involved in this crime and Lara's extensive travel to Mexico in recent years.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge may seek review of the detention order in district court. The district court's review is de novo. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). The court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *Id.* at 250.

---

Lara's appearance or the safety of the community, *see* 18 U.S.C. § 3142(e)(3), and that Lara failed to rebut that presumption, *see* (Dkt. #292, Ex. A at 2). The order did not consider the factors in 18 U.S.C. § 3142(g) or find that the Government proved that no condition or combination of conditions will reasonably assure either Lara's appearance by preponderance of the evidence or the safety of the community by clear and convincing evidence. *See* (Dkt. #292, Ex. A at 3–4). Instead, the magistrate judge orally ordered detainment at the hearing. *See United States v. Lara*, 5:19-MJ-2590 (S.D. Tex. April 13, 2020) (Dkt. #13) (transcript of detention hearing held on October 31, 2019).

## III. DISCUSSION

### A. Law Governing the Release and Detention of Defendants Awaiting Trial

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial upon a finding that the government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person" or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required.").

Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3141(g); *see also United States v. Acosta-Leyva*, 751 F. App'x. 594, 595 (5th Cir. 2019).

In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure [1] the appearance of the person as required and [2] the safety of any other person and the community." 18 U.S.C. § 3142(e). The rebuttable presumption arises upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586 (citing 18 U.S.C. § 3142(e)). Probable cause exists when offenses under the Controlled Substances Act are charged in an indictment. *See, e.g.*, *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987) ("[T]his court stated that the presumption against pretrial release arises when drug crimes are charged in the indictment. It is therefore clear that the presumption was properly applied to [the defendant] upon proof that he had been indicted under the Controlled Substances Act.") (internal citations omitted).

Section 3142(e)'s rebuttable presumption shifts to the defendant "only the burden of producing rebutting evidence, not the burden of persuasion," which remains with the government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."). If the defendant does not present evidence sufficient to

rebut the presumption, the court must nevertheless still review the section 3142(g) factors. *See* 18 U.S.C. § 3142(g) (stating that the court "*shall* . . . take into account the available information . . .") (emphasis added); *see also United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (stating that section 3142(g) "*mandates* district court review of certain factors"). As the Fifth Circuit has explained, the statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

**B. Lara Is Both a Flight Risk and a Danger to the Community.**

Lara contends that the Government cannot prove by a preponderance of the evidence that no combination of release conditions could reasonably assure his appearance at trial, and likewise cannot prove by clear and convincing evidence that no combination of release conditions could reasonably assure the safety of the community during his release. To decide the motion, the Court must first determine whether Lara is statutorily presumed to be a flight risk and a danger to the community and, if so, whether he has presented evidence sufficient to rebut those presumptions.

**1. Section 3142(e)'s rebuttable presumption applies and has been rebutted only in part by Lara.**

The rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies in this case. Lara has been indicted for alleged violation of 21 U.S.C. § 846, specifically conspiracy to possess with the intent to manufacture and

distribute 5 kilograms or more of cocaine. Under the Controlled Substances Act, Lara faces imprisonment of not less than 10 years and not more than life, a fine of up to $10,000,000, and at least five years of supervised release. *See* 21 U.S.C. § 846 (setting the conspiracy penalty to match the penalty for the object of the conspiracy); *id.* § 841(b)(1)(A) (setting the penalty for the object of the conspiracy in this case).

The indictment provides probable cause to believe that Lara committed the charged offense. *See Trosper*, 809 F.2d at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony and accompanying evidence from Officer Solis supports the finding of probable cause. *See Fortna*, 769 F.2d at 252–53 (finding probable cause, in part, using the affidavit of an investigating agent). Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies.

To rebut the presumption, Lara bears "only the burden of producing rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798. Lara has produced evidence sufficient to rebut the presumption that no combination of conditions will reasonably assure his appearance, but not to rebut the presumption that no combination of conditions will reasonably assure the public safety.

### i. Appearance at trial and risk of flight

Lara produced evidence of his ties to the locality through testimony offered by his brother, his mother, and his four sisters.[3] Lara's family members testified that he

---

[3] Lara's brother, mother, and two of his sisters presented live testimony. The two remaining sisters' testimony was proffered by Lara's counsel without objection from the Government.

has lived in Laredo, Texas his entire life and that most of his immediate family also reside in Laredo. These witnesses further confirmed that Lara has been consistently employed since graduating from barber college and that he owns two small businesses in the area.

Ultimately, Lara's evidence is not persuasive regarding his flight risk, particularly given the evidence of Lara's longstanding family ties to Mexico and hundreds of trips to Mexico. However, because Lara only bears the burden of production, not of persuasion, he carried his burden of producing evidence sufficient to rebut the presumption as to risk of flight. *Cf. Rueben*, 974 F.2d at 587 (determining that defendants failed to rebut the presumption that they were a danger because they presented "absolutely no evidence whatsoever" that they would cease their "continuous[] engage[ment] in the trafficking of drugs"). The presumption that no combination of conditions can reasonably assure Lara's appearance at trial has been rebutted but remains as a factor to be considered in the Court's analysis. *See Fortna*, 769 F.2d at 251.

### ii. Danger to the community

Lara did not produce evidence sufficient to rebut the presumption that no combination of release conditions could reasonably assure the public safety. Each of Lara's testifying family members claimed to have a positive influence on Lara and confirmed their willingness to help supervise him and report infractions should he be released. However, each of Lara's testifying family members also admitted that they had no knowledge of Lara's years-long history of drug use, his extensive international

travel to Mexico, and his alleged criminal activity in an international drug conspiracy operating in Mexico and the United States. Under the circumstances, the generalized assurances of supervision offered by Lara's family members provided no meaningful evidence that they could now protect the community from Lara's drug trafficking operations.

At most, his siblings said they trusted Lara around their children. But each of Lara's family members ultimately contradicted those statements by admitting that they would be reluctant to let drug traffickers around their family due to fear for their safety. In sum, Lara failed to present the "quality or competence of evidence" required to rebut the presumption of his dangerousness. *Trosper*, 809 F.2d at 1111.

### 2. Application of the section 3142(g) factors confirms that Lara must be detained pending trial.

Having determined that the presumption applies and that Lara presented evidence sufficient to rebut the presumption as to his appearance but not as to the public safety, the Court must now consider the section 3142(g) factors to answer the ultimate question of whether the Government carried its burden of proof. The Court finds that, having reviewed the section 3142(g) factors, the Government proved by a preponderance of the evidence that no combination of release conditions could reasonably assure Lara's appearance and further proved by clear and convincing evidence that no such conditions could reasonably assure the safety of the community pending trial. For these reasons, Lara must remain detained pending trial.

### i. Nature and circumstances of the offenses charged

Lara has been charged with a serious crime. Law enforcement conducted an investigation of a drug organization believed to be responsible for purchasing large quantities of drugs, including heroin and cocaine, from Mexico and distributing them from Texas to states nationwide. As a result of that investigation, fifteen people were indicted for drug-related offenses, including Lara. Lara was indicted for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. He now faces imprisonment of not less than 10 years and not more than life, a fine of up to $10,000,000, and at least five years of supervised release. *See* 21 U.S.C. § 846; *id.* § 841(b)(1)(A). The severity of Lara's potential sentence weighs heavily in favor of detention. *See United States v. Neff*, No. 3:11-CR-152, 2013 WL 30650, at *3 (N.D. Tex. Jan. 3, 2013) (finding that a cumulative twenty-five year maximum sentence weighs in favor of detention); *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) (finding that a 375-month potential sentence "weighs heavily in favor of detention").

Lara's significant role in the charged offense also weighs heavily in favor of detention. According to testimony from Officer Solis, corroborated by a confidential informant and evidence from drug ledgers and cell phones seized from Lara upon his arrest, Lara negotiated the purchase and coordinated the acquisition of large quantities of illegal drugs on behalf of the drug trafficking organization for transportation and sale nationwide. Based on information from a confidential informant, Officer Solis testified that Lara was responsible for negotiating drug

purchase prices, including the purchase of 12 kilograms of cocaine seized in Laredo, Texas in 2019. Drug ledgers show that Lara kept records of transactions involving dozens of kilograms of drugs valued at hundreds of thousands of dollars. The ledgers included calculations of Lara's personal profits.

Lara also had authority over other members of the drug organization. In text messages from Lara's cell phones, Lara and another alleged member of the organization extensively discussed the details of the drug operation. Those conversations included details about transactions consistent with entries in the drug ledgers. In one exchange, Lara sent photographs of cocaine on a scale and said, "[w]e weigh them out before shipping[.]" The conversations also included Lara's instructions about how to proceed and acknowledgement of Lara's status as a "boss."

Collectively, rather than showing a minor or distanced role from the drug organization, the evidence of Lara's involvement shows that he had a significant, managerial role in the drug trafficking organization and was important to its operations in Texas and other areas of the United States. This factor weighs in favor of detention. *See United States v. Volksen*, 766 F.2d 190, 193 (5th Cir. 1985) (upholding a district court's detention order based on the presumption of dangerousness and the government's evidence of the defendant's "participation in numerous drug and unlawful firearms transactions"); *see also Rueben*, 974 F.2d at 586 ("the risk of continued narcotics trafficking on bail does constitute a risk to the community . . .").

### ii. Weight of the evidence

The Court must consider the weight of the evidence against Lara, but "courts have found this factor to be of least importance in the detention determination." *Stanford*, 630 F. Supp. 2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La. 1997).

The Government provided strong evidence that Lara was an important member of the drug organization who personally oversaw drug purchases and lower-level members. Officer Solis testified to extensive evidence from drug ledgers and cell phones seized upon Lara's arrest and to information from a confidential informant linking Lara to numerous drug transactions and demonstrating Lara's significant involvement and role in the organization. This factor also favors detention.

### iii. History and characteristics of the Defendant

Lara's history and characteristics do not dispel concerns about his flight risk and danger to the community. Lara has some ties to the community. He was born and raised in Laredo, Texas, where his mother, wife, children, and several siblings live and where he owns two small businesses. But those ties do not overcome his proximity to Mexico—where the drug organization obtains illegal drugs and where Lara has family members—and his hundreds of trips to Mexico. The Government produced evidence that the primary channel of heroin and cocaine purchased and redistributed by the organization is through Mexico into Texas. Lara travelled to Mexico 328 times between August 2, 2006 and August 20, 2019. Lara's family members could only account for one trip each year to help his mother with medical

treatment and a handful of other trips to see family or friends. The Government presented persuasive evidence suggesting that many if not all of the remaining trips were related to Lara's role in the drug organization and that some trips involved Lara misrepresenting personal information to border authorities. The regularity and ease of Lara's travel to Mexico, and the evidence that Lara has family members in Mexico who would welcome him, raises serious concern about his risk of flight.

Further, Lara has previously failed to appear at judicial proceedings. In 2017, Lara failed to appear at a status hearing for a charge of assault causing bodily injury to a family member.[4] A warrant was issued and executed four months later to finally procure his appearance.

This evidence, coupled with the testimony on Lara's significant role in the drug organization and the charged offense, weighs heavily in favor of detention. *See Volksen*, 766 F.2d at 193 (upholding a district court's order of detention based on the presumption of flight risk and the government's evidence of the defendant's interest in fleeing the country to avoid prosecution).

### iv. Nature and seriousness of the danger posed by the Defendant

Lara's significant role in a drug organization implicated in distributing large quantities of illegal drugs, including heroin and cocaine, demonstrates the nature and seriousness of the danger he poses to the community. The Government provided evidence from the investigation that Lara was an important member of the drug organization with authority over purchasing and acquiring drugs for the organization

---

[4] The charge, however, was ultimately dismissed.

and over some lower-level organization members. The investigation has shown Lara to be personally involved in numerous purchases of cocaine, involving dozens of kilograms of cocaine worth hundreds of thousands of dollars.

For all of these reasons, the Court holds that no combination of conditions of release pending trial would reasonably assure Lara's appearance at trial or the public safety.

## IV. CONCLUSION

It is **ORDERED** that Defendant Alexandro Javier Lara's Motion to Review and Appeal Detention Order, (Dkt. #292), is hereby **DENIED**.

**So ORDERED and SIGNED this 28th day of April, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE